409 A.2d 137.

FRANK A. CARTER, JR., CHIEF DISCIPLINARY COUNSEL *vs.*
GLEN A. ANGER, ESQUIRE.

DECEMBER 18, 1979.

PRESENT: Bevilacqua, C.J., Kelleher, Weisberger and Murray, JJ.

KELLEHER, J.    Glen A. Anger (Anger) has been a member of the Rhode Island Bar since June 15, 1972, and during this period has carried on the practice of law in the Woonsocket-Blackstone Valley area. He is now before us in response to our order to show cause why we should not accept the recommendations of this court's Disciplinary Board (the board) calling for his suspension from the practice of law. The recommendation comes after a series of hearings conducted by one of the board's hearing panels and concluding with the board's acceptance of the panel's report. Anger had been charged with violations of DR 1-102(A)(4) and DR 1-102(A)(6) of the Code of Professional Responsibility.

The evidence adduced at the hearings was relatively uncontradicted. On February 4, 1978, Anger purchased a new Cadillac from a Woonsocket automobile dealer and tendered in payment a check for $12,000. The check was drawn upon the Greater Providence Deposit Corporation and in due course was returned to the dealer with a notation of insufficient funds. Once the dealer told Anger what had occurred, Anger issued a second $12,000 check drawn upon the Rhode Island Hospital Trust National Bank. When the second check bounced, the dealer's efforts to contact Anger proved unsuccessful because he had left Rhode Island only to return some two months later, in April of 1978.

Anger's sudden departure brought to light a second incident. In January 1978, he had purchased a parcel of commercial property in Bellingham, Massachusetts, for $50,000. As part of the purchase price he tendered two checks: one was for $15,141.76, and the other was for $11,500. Both checks were drawn on the Greater Providence account and were not honored. When the seller contacted him, Anger issued two checks on the Hospital Trust account, and they too bounced. Thus, the seller was forced to engage counsel, and litigation began in Massachusetts that culminated in the cancellation of the deed and restoration of title to the seller. At this point we would point out that the owner of the automobile agency also owned the Bellingham real estate.

At the hearing, Anger portrayed himself as blameless and attributed all his difficulties to a financial consultant named Ronald L. Riccardi, who had operated a business located in Pawtucket known as Apex Financial Service, Inc. According to Anger, the rubber checks were a direct result of Riccardi's false assurances that he had established a line of credit for Anger with Hospital Trust.

The board rejected this contention, pointing out that Riccardi's failure offered no defense to the bad checks issued on the Greater Providence account. Anger concedes that the factual conclusions reached by the board are entitled to great weight by us and will not be disturbed unless he can convince

us that the board was clearly wrong. Here, the board found that Anger's check-writing endeavor was "conduct involving dishonesty, deceit and misrepresentation, which conduct adversely reflects on his fitness to practice law."

DR 1-102(A), in its pertinent provisions, warns all lawyers that they

"shall not:

\* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

\* \* \*

(6) Engage in any other conduct that adversely reflects on his [or her] fitness to practice law."

The board obviously has overlooked the words in DR 1-102(A)(6), "any other conduct," a catchall phrase for all other misconduct that is not specifically alluded to in the other portions of the rule. While we uphold the finding of deceitful conduct, we must vacate the finding that Anger violated DR 1-102(A)(6) because there was no evidence whatsoever of "any other" misconduct that the board believed adversely affected Anger's fitness to practice law.

Before us, Anger's counsel made much of his client's efforts in the area of restitution. Furthermore, the owner of the dealership and the Bellingham real estate made it perfectly clear to the board that he wished the complaints could have been withdrawn.

While restitution following a violation of an ethical duty might be a mitigating factor in ascertaining the extent of a disciplinary sanction, it affords no defense for an attorney's misconduct. *In the Matter of Mahoney*, 78 N.J. 248, 394 A.2d 89 (1978). Furthermore, neither the unwillingness of the complainant to prosecute a charge nor the settlement of any charge shall ipso facto warrant the abatement of an investigation by the Disciplinary Board. Supreme Court Rule

42-8. Apart from the repayment, the other sole, but somewhat significant, mitigating factors are Anger's youth and comparative inexperience. While we are deeply concerned with the behavior he exhibited during the January-April 1978 period, including his two-month absence from the state, we believe that the public interest will best be served by a short period of suspension.

Consequently, it is ordered that Glen A. Anger be and is hereby suspended from engaging in the practice of law beginning January 1, 1980, and continuing until further order of the court; he may, however, apply for reinstatement on or after July 1, 1980. He is further directed to furnish the clerk of this court on or before December 21, 1979, the names and addresses of all clients presently represented by him. The effective date of this order has been deferred so that there will be a reasonable period of time during which arrangements can be made to protect the interests of his clients.

Mr. Justice Doris did not participate.

*Frank A. Carter, Jr.,* pro se, for petitioner.

*Eugene F. Toro,* for respondent.